MEMORANDUM DECISION AND JUDGMENT ENTRY.
On July 26, 1997, Vince Berry was participating in a fundraiser for a local youth sports team at a car wash on Linn Street in Cincinnati. Present with Berry were his wife and children. Unknown to his wife and children, Berry had been having an affair with Roxanne Ushery for several years. The evening prior to the car wash, Berry had asked Ushery to come to the car wash so that he could wash her car for her.
Ushery drove by the car wash twice during the middle of the day, but, failing to see Berry's car, did not stop. Late in the afternoon, Ushery pulled into the car wash with her sister-in-law. Although Ushery did not see Berry at first, Ushery did see Berry's car. Once Ushery finally saw Berry, she tried to get his attention, but Berry was busy drying another car. When Berry finished with the car he was drying, he moved to another bay at the car wash, and Ushery repositioned her car to enter that bay.
Ushery finally decided to approach Berry, but realized at the same time that Berry's wife was present. Feeling somewhat perturbed at the presence of Berry's wife and at the fact that Berry appeared to be ignoring her, Ushery confronted Berry, made several comments to him, and asked that Berry return the keys to her house. Berry appeared somewhat annoyed with Ushery, but continued to ignore Ushery's increasingly antagonistic comments.
Berry finally acknowledged Ushery and walked with her a short distance away from where Ushery's car was now being washed. The two argued for several minutes before Berry returned to help dry Ushery's car. Ushery yelled at Berry, who turned to walk back in Ushery's direction. At that moment, Ushery threw a beer bottle at Berry.
Berry tried, unsuccessfully, to avoid being hit by the bottle. Ushery then drew a silver-plated handgun out of her purse and shot Berry from a distance of approximately five feet away. Berry briefly stared at Ushery, then turned to run away. Berry only made it a few yards before he was caught by a friend and placed on the ground. Berry was bleeding profusely from his chest and mouth.
Ushery jumped into her car and pulled around to where Berry lay. Ushery got out of her car and told Berry she was sorry. Police arrived and Berry was soon taken to the hospital, where he succumbed to his fatal wounds. Ushery was subsequently arrested and charged with Berry's murder.
On August 1, 1997, the Hamilton County Grand Jury indicted Ushery for murder, a violation of R.C. 2903.02, with a gun specification, and for carrying a concealed weapon, a violation of R.C. 2933.12. A jury found Ushery guilty as charged. On February 19, 1998, the trial judge sentenced Ushery for the murder conviction to fifteen years to life, plus three additional years for the gun specification. The trial judge initially found that the carrying-a-concealed-weapon offense should merge with the murder conviction, so a sentence was not imposed on that day; however, one week later, the trial judge held another sentencing hearing to impose a concurrent eighteen-month sentence on Ushery for carrying a concealed weapon.
Ushery now appeals her conviction, claiming (1) that the trial judge erred as a matter of law by excusing a potential juror who was black, (2) that the evidence was insufficient as a matter of law to sustain a conviction and that the conviction was against the manifest weight of the evidence, and (3) that the trial judge committed plain error in failing to instruct the jury on the lesser-included offense of involuntary manslaughter. For the following reasons, we disagree with Ushery's claims and affirm the conviction.
In Ushery's first assignment of error, she relies uponBatson v. Kentucky (1986), 476 U.S. 79, 106 S.Ct. 1712, to support her claim that the state used its peremptory challenges to strike three jurors based upon their race. We disagree.
The Supreme Court of Ohio has stated time and again:
 To make a prima facie case of purposeful discrimination, the defendant must demonstrate (1) that members of a cognizable racial group were peremptorily challenged, and (2) that the facts and any other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude jurors on account of their race.
 State v. Raglin (1998), 83 Ohio St.3d 253, 265, 669 N.E.2d 482, 492, citing State v. Hill (1995), 73 Ohio St.3d 433, 653 N.E.2d 271. Once the defendant has made a prima facie case, the state must present to the trial judge a race-neutral explanation for the challenge. Id. This court will only reverse the trial judge's finding of no discriminatory intent if the trial judge's finding was clearly erroneous. Raglin, supra; see, also, State v. Hernandez (1992), 63 Ohio St.3d 577, 583, 589 N.E.2d 1310, 1314.
The state used its first peremptory challenge to excuse prospective juror Hall. Prior to Ushery objecting and making out a prima facie case for discrimination, the trial judge asked counsel to approach the bench. The trial judge inquired about the reasons for the peremptory challenge. The prosecutor stated that Hall was related to a prominent defense attorney in Cincinnati, who was known to "spout venom about the prosecutor's office on a weekly basis" on his radio show, and that Hall was single and without children, which was a major concern for the prosecutors in the case. Without further comment, the trial judge accepted this explanation and excused Hall.
The state's second peremptory challenge to prospective juror Hunter was also met with the trial judge requesting an explanation prior to an objection by Ushery. The prosecutor stated that the state was seeking jurors who were married with children, and that Hunter was neither. Furthermore, the prosecutor pointed out that three African-American jurors remained on the panel. The trial judge accepted this explanation and excused Hunter.
On the state's fourth peremptory challenge to prospective juror Irby, Ushery objected, stating that this was the third African-American, and fourth minority, to be peremptorily challenged by the state.[1] The prosecutor explained once again that the state was looking for married persons, preferably with children. Since Irby was not married and did not have children, the trial judge accepted this race-neutral explanation and excused Irby, which left only one other person on the jury who was single and had no children.
We hold that Ushery failed to establish a prima facie case for discrimination, and that even if Ushery had made out a prima facie case, the state offered specific, race-neutral explanations for the peremptory challenges. Furthermore, it must be noted that three African-American jurors were part of the jury that was duly impaneled to sit in judgment of Ushery. We conclude that the trial judge's apparent finding of no discriminatory intent was not clearly erroneous. Therefore, we overrule Ushery's first assignment of error.
Ushery's second assignment of error challenges the sufficiency and weight of the evidence presented by the state to support the finding of her purpose to kill Berry. Where substantial evidence is presented by the state to support all elements of the charged offense, and that evidence is sufficiently probative of guilt, this court will not reverse on either the sufficiency or the weight of the evidence. See State v.Barnes (1987), 25 Ohio St.3d 203, 495 N.E.2d 922; Statev. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. Ushery contends that Berry scared her, and that because she (1) did not flee from the scene and (2) offered her apologies, she demonstrated her lack of purpose to kill. The purpose to kill another must be inferred from the actions of the defendant at the time of the murder, not from what transpired after the fact. SeeState v. Phillips (1995), 74 Ohio St.3d 72, 82,656 N.E.2d 643, 656, citing State v. Campbell (1994),69 Ohio St.3d 38, 48, 630 N.E.2d 339, 349-350. The state presented evidence that Ushery argued with Berry, threw a beer bottle at Berry, and pulled a gun out of her purse, firing directly into Berry's chest after telling Berry that she would shoot him. Such evidence properly demonstrated Ushery's purpose to kill and supported the jury's verdict of guilty beyond a reasonable doubt. Therefore, we overrule Ushery's second assignment of error.
In Ushery's final assignment of error, Ushery contends that the trial judge committed plain error in failing to suasponte give a jury instruction on involuntary manslaughter. In State v. Thomas (1988), 40 Ohio St.3d 213,533 N.E.2d 286, the Supreme Court of Ohio held the following:
 Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense.
 The court has also held that the use of an inherently dangerous weapon, such as Ushery's handgun, demonstrates a purpose to kill. See State v. Johnson (1978), 56 Ohio St.2d 35, 381 N.E.2d 637. All of the evidence in this case demonstrated that Ushery's acts were purposeful, not accidental, so an involuntary-manslaughter instruction was not warranted. Therefore, Ushery's third assignment of error is overruled, and the judgment of the trial court affirmed.
And the Court, being of the opinion that there were reasonable grounds for this appeal, allows no penalty. It is further Ordered that costs be taxed in compliance with App.R. 24, that a copy of this Memorandum Decision and Judgment Entry shall constitute the mandate, and that said mandate shall be sent to the trial court for execution pursuant to App.R. 27.
Judgment affirmed.
Painter, P.J., and Sundermann, J., concur.
To the Clerk:
Enter upon the Journal of the Court on May 28, 1999 per order of the Court _______________________________. Presiding Judge
[1] The state also exercised a peremptory challenge to excuse, without objection or discussion, prospective juror Leung, a Chinese-America.