OPINION
Defendant-appellant Cleveland Grigsby appeals from his conviction and sentence for Murder and Attempted Murder, both with firearm specifications. Grigsby contends that the trial court erred by failing to instruct the jury on the lesser-included offenses of Felonious Assault, Attempted Voluntary Manslaughter, and Voluntary and Involuntary Manslaughter, and by sentencing him to serve consecutive terms of imprisonment for the firearm specifications.
We conclude that the trial court did not err in instructing the jury. We further conclude that the two firearm specifications arose from separate transactions, involving distinct purposes, and that the trial court, therefore, did not err in imposing those sentences consecutively. Accordingly, the judgment of the trial court is
Affirmed.
 I
On the morning of August 25, 1999, Grigsby took his girlfriend, Monica Seldon, to her place of employment. The two had been involved in an argument that morning, resulting in Grigsby breaking up with her when he dropped her off at work.
That afternoon, Seldon's friend, Raymond Captain, arrived at her place of work to give her a ride home. Captain's car was parked in front of Seldon's place of employment and the two were sitting in the car, when Grigsby pulled up in Seldon's car. Seldon informed Captain that she would ride home with Grigsby. As Seldon got out of Captain's car and began to gather up her belongings, Grigsby approached the car and attempted to shoot Captain. For some reason, the gun did not discharge. Grigsby then walked around to the front of the vehicle. Grigsby proceeded to shoot Seldon twelve times; ten of the shots were fired after Seldon fell to the ground. Captain exited his car and began to run away, at which time Grigsby turned and fired twice at him. Grigsby then got back in Seldon's car, drove away and disposed of the gun. Upon his arrest, Grigsby admitted that he shot Seldon, but did not recall shooting at Captain.
Grigsby was indicted on one count of Murder, in violation of R.C.2903.02(A), with a firearm specification; one count of Attempted Murder, in violation of R.C. 2903.02(A), with a firearm specification; one count of Tampering with Evidence, in violation of R.C. 2921.12(A)(1), with a firearm specification; and one count of Having a Weapon While Under a Disability, in violation of R.C. 2923.12(A)(2). Following a jury trial, Grigsby was convicted of all the offenses as charged. He was sentenced to fifteen years to life for Murder, with a three-year firearm specification, and ten years for Attempted Murder, with a three-year firearm specification, to be served consecutively. The trial court also made a finding that the firearm specifications arose from different transactions. Grigsby was also sentenced to five years for Tampering with Evidence, with a one-year firearm specification, and twelve months for Weapons under Disability, both to be served concurrently with the other sentences. From his conviction and sentence, Grigsby appeals.
 II
The First Assignment of Error is as follows:
 THE COURT ERRED BY NOT GIVING APPELLANT'S REQUESTED JURY INSTRUCTIONS ON LESSER INCLUDED OFFENSES.
Grigsby contends that the trial court should have instructed the jury on the offenses of Voluntary Manslaughter and Involuntary Manslaughter as lesser included offenses of Murder, and on Felonious Assault and Attempted Voluntary Manslaughter as lesser-included offenses of Attempted Murder.
"An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." State v. Carter (2000), 89 Ohio St.3d 593, 600, quoting, State v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus. An instruction on a lesser-included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense. Id., citations omitted. The persuasiveness of the evidence regarding the lesser included offense is irrelevant. State v. Wilkins (1980), 64 Ohio St.2d 382, 388. If under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense, the instruction on the lesser offense must be given. Id. "In making this determination, the court must view the evidence in the light most favorable to the defendant." State v. Smith (2000), 89 Ohio St.3d 323,331, citations omitted. Grigsby first argues that the trial court erred by denying his request to instruct the jury on Voluntary Manslaughter, a lesser-included offense of Murder. See, State v. Ledbetter (Oct. 14, 1994), Greene App. No. 93-CA-54, unreported. Murder is defined as purposefully causing the death of another. R.C. 2903.02(A). All of the elements of Voluntary Manslaughter are contained within the offense of Murder except for the mitigating element of serious provocation. Ledbetter, supra. To establish Voluntary Manslaughter, one must show that: (1) there was reasonable provocation; (2) the defendant was in fact provoked; (3) a reasonable man would not have "cooled off" in the time between the provocation and the offense; and (4) the defendant did not in fact "cool off." Id.
Here, Grigsby contends that he was seriously provoked by the fact that he and Seldon argued and broke up in the morning, and by the fact that when he went to pick her up after work, she was in the car with another man. He claims that he was "pissed," and that "it is clear that seeing the mother of one's children in a car with another man shortly after an acrimonious fight in which his relationship was ended would be sufficient" to show serious provocation, and a lack of cooling-off time.
The record shows that Grigsby was aware that Captain and Seldon were merely friends. The only possible provocation shown on this record is the argument that occurred in the morning when Grigsby broke up with Seldon. The crime occurred more than seven hours later. Grigsby has failed to show that a reasonable person would not have cooled off between the time of the fight and the time of the killing. Therefore, we conclude that the trial court did not err in denying the requested instruction.
We next examine Grigsby's claim that he was entitled to an instruction on Involuntary Manslaughter, also a lesser-included offense of Murder. Ledbetter, supra. R.C. 2903.04, the Involuntary Manslaughter statute, states that "no person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." Grigsby claims that the underlying felony on which the charge would be founded is Felonious Assault, which is defined as knowingly causing serious physical harm to another or physical harm to another by means of a deadly weapon. R.C. 2903.11(A)(2). This court has stated that a defendant seeking a lesser-included offense instruction of Involuntary Manslaughter in a Murder case is "entitled to [the instruction] if there is evidence in the record that, if believed, would persuade the average mind by the requisite standard of proof that [the defendant] had no purpose to kill, but had a purpose to cause [the victim] either serious physical harm or physical harm by means of a deadly weapon, as a proximate result of which, [the victim is] killed." Ledbetter, supra.
The Ohio Supreme Court has noted that the number and location of wounds can determine whether an instruction on Involuntary Manslaughter should be given.
State v. Campbell (1994), 69 Ohio St.3d 38, 47. In Campbell, the victim was stabbed twice in the chest, once in the chin, and once through the wrist. Id. at 48.
The Court held that the victim's wounds, in that case, would compel any reasonable trier of fact to find intent to kill. Id. Therefore, the Court found that the defendant was not entitled to the requested instruction. Id.
In this case, Grigsby shot Seldon twice at close range. He then proceeded to shoot her ten more times after she fell to the ground. Ten of the shots were to Seldon's chest and abdomen; in fact, two of the shots pierced her heart. Nothing in the record indicates that Grigsby intended anything less than to kill Seldon, the natural, reasonable, and probable consequence of shooting a person ten times in the chest and abdomen. Therefore, the trial court committed no error, since no instruction as to a lesser-included offense was warranted by the evidence.
Grigsby also requested the trial court to instruct the jury on Felonious Assault as a lesser-included offense of Attempted Murder. He argues that the evidence supports the instruction. Specifically, he argues that had he aimed to kill Captain, he "could have easily done so." He further argues that the fact that he missed Captain when shooting at such close range indicates that he did not intend to kill Captain, only to harm him.
The undisputed evidence is that Grigsby walked up to the driver's side of the car, pointed the gun directly at Captain, and attempted to fire at close range. Fortunately, the gun failed to discharge, and while Grigsby was otherwise occupied with shooting Seldon, Captain was able to exit the car. However, Grigsby again aimed directly, and fired twice, at Captain when Captain was attempting to flee.
The evidence shows Grigsby's intent was to kill Captain. He aimed directly at him once from close range, and further fired at him a second time after killing Seldon. Accordingly, the trial court did not err in denying the request to instruct the jury on Felonious Assault.
Finally, Grigsby contends that the trial court erred by failing to instruct the jury on Attempted Voluntary Manslaughter as a lesser-included offense of Attempted Murder. Again he argues that the same reasoning supporting the Voluntary Manslaughter instruction, seeing Seldon in the car with another man, supports this request.
Grigsby candidly admits that he failed to request this instruction at the trial court level. Therefore, our review of this issue is under the plain error standard. As with our resolution of the Voluntary Manslaughter instruction, we find that the evidence does not support this request. At the trial, no explanation was offered for Grigsby's motive in shooting at Captain. It appears that Captain was simply in the wrong place at the wrong time. No evidence was presented from which the jury could have found that in shooting at Captain, Grigsby was acting out of a sudden passion or sudden fit of rage brought on by serious provocation occasioned by the victim, Captain, which is the mitigating element necessary for Voluntary Manslaughter, R.C. 2903.03(A), or, in this case, Attempted Voluntary Manslaughter.
We conclude that the evidence in the record did not warrant an instruction on Attempted Voluntary Manslaughter; therefore, we find no error, let alone plain error, in this regard.
The First Assignment of Error is overruled.
 III
The Second Assignment of Error provides as follows:
 THE COURT ERRED BY SENTENCING APPELLANT TO CONSECUTIVE IMPRISONMENT FOR TWO THREE YEAR FIREARM SPECIFICATIONS INVOLVED IN A SINGLE ACT OR TRANSACTION.
Grigsby contends that the trial court erred by sentencing him to serve consecutively the two three-year sentences imposed for the firearm specifications associated with the Murder and Attempted Murder convictions. In support, he argues that the shootings were part of the same transaction, and thus, the convictions for the firearms specifications were required to be merged.
For purposes of sentencing on firearms specifications, "transaction" has been defined by the Ohio Supreme Court as "a series of continuous acts bound together by time, space and purpose, and directed toward a single objective." State v. Gonzalez (July 10, 1998), Clark App. No. 96CA124, unreported, quoting State v. Wills (1994), 69 Ohio St.3d 690,691.
In this case, the evidence shows that Grigsby was angry with Seldon. The record shows that Grigsby shot Seldon because she was capable of "pulling [his] strings" and he was "pissed" at her because of the morning argument. However, there is no evidence to show that he was angry with Captain. Nor does the record support a claim that Grigsby shot Captain in a jealous fit. In fact, when he addressed Captain at sentencing, Grigsby indicated that he did not know why he shot at him, but did state that the shooting was not caused by jealousy. While the shootings may have occurred in the same time and space, there can be no doubt that they were not committed with the same purpose or objective. Anger motivated one shooting, while the other shooting may have been an effort to eliminate a potential witness, or may have been a motiveless act committed while Grigsby was deranged.
Therefore, we conclude that the trial court did not err in its finding that the offenses were not part of the same transaction and sentencing Grigsby to serve consecutive sentences thereupon.
Accordingly, the Second Assignment of Error is overruled.
 IV
Both of Grigsby's assignments of error having been overruled, the judgment of the trial court is Affirmed.
 ________ FAIN, J.
BROGAN and GRADY, JJ., concur.