DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant-appellant Timothy J. Blondheim appeals the judgment of the Summit County Court of Common Pleas sentencing him to five years of incarceration. We affirm.
On November 15, 1996, the Summit County Grand Jury indicted Blondheim. The indictment contained three counts: 1) endangering children, in violation of R.C. 2919.22(B)(1), a felony of the second degree; 2) endangering children, in violation of R.C.2919.22(B)(2), a felony of the third degree; and 3) felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree. On December 3, 1996, a supplement to the indictment was filed, adding three more counts: 4) endangering children, in violation of R.C. 2919.22(B)(2), a felony of the second degree; 5) endangering children, in violation of R.C.2919.22(A), a felony of the fourth degree; and 6) felonious assault, in violation of 2903.11(A)(1), a felony of the second degree.
Counts one, two and three were dismissed by the state. Counts four, five, and six were thereafter known as counts one, two, and three. A jury trial was held and on April 28, 1997, Blondheim was found guilty of all three counts. The jury found that Blondheim's endangerment of children resulted in physical harm. On June 26, 1997, the trial court sentenced Blondheim to a definite period of five years of incarceration on count one, a definite period of one year of incarceration on count two, and a definite period of five years of incarceration on count three. All terms of incarceration were to be served concurrently. Blondheim appeals, assigning two errors.
 I.
Blondheim's first assignment of error is:
 THE SENTENCE IMPOSED UPON DEFENDANT-APPELLANT IS CONTRARY TO LAW
On November 6, 1996, Blondheim was home alone with his six to seven-week old daughter, Montgomery. At approximately 2:02 p.m., a 911 call regarding a baby in distress was made. Paramedic Lt. Michael Scott responded to the 911 call and went to the residence. Upon arrival, Lt. Scott determined that Montgomery was in quite a bit of distress and was having difficulty breathing. The baby was transported to Children's Hospital Medical Center of Akron (Children's) by ambulance as a "code 3," which Lt. Scott testified was "considered life or limb threatening." Lt. Scott further testified that he had assessed Montgomery's condition to be critical. When asked what had happened to Montgomery, Blondheim stated that he had left her in her "bouncy seat" after feeding her a bottle. Blondheim then stated that he went to the bathroom, and when he returned, he found Montgomery on the floor, face down, with milk coming out of her nose and mouth. When she appeared to have difficulty breathing, Blondheim called 911 for help.
Blondheim repeated essentially the same story to Montgomery's health care providers and to persons investigating the situation: that he left the baby alone, unstrapped in her "bouncy seat," and that she fell a maximum of six inches to the floor, where he found her a few minutes later. There was testimony at the trial that he told at least one person that he found the baby "face up."
Michael Billow, M.D., a pediatric intensivist at Children's, treated Montgomery for her injuries. Dr. Billow testified that Montgomery's condition was such that "if certain therapeutic, medical maneuvers weren't performed, she would have died right there in the emergency room." Dr. Billow testified that Montgomery received a tube in her airway to control her breathing and that she was having seizures, and that these seizures were difficult to control. Dr. Billow testified that Montgomery suffered "retinal hemorrhages" and brain swelling and that he was "concerned that she may progress over a 12-, 24-, to 48-hour period to potential brain death." Dr. Billow also stated that in his professional opinion, Montgomery could not have sustained her injuries by falling a short distance from a "bouncy seat" to a carpeted floor. When asked what could have caused Montgomery's injuries, Dr. Billow responded that his opinion, based on a reasonable degree of medical certainty, was that Montgomery had "suffered both a shaking injury * * * and an injury of [ ] direct sudden impact." Dr. Billow testified that Montgomery's injury was severe and that the baby was "essentially in a coma."
Dr. Richard Kraus, a radiologist at Children's testified that Montgomery had a "subarachnoid hemorrhage and subdural hemorrhage and edema, or swelling," of the brain and that a more recent CT scan revealed that Montgomery's brain had atrophied.
Montgomery was eventually moved from the intensive care unit at Children's to a regular floor. Nicholas Libertin, M.D., one of Montgomery's pediatricians, testified that he and his partners took over the care of Montgomery when she was released from ICU and that they were concerned because Montgomery "progressed slowly" and "had frequent seizures." Montgomery was in the hospital a total of nineteen days. Dr. Libertin testified that Montgomery, at age seven months, appeared to be functioning at the level of a four- to five-month old baby, and Montgomery's head did not appear to be growing normally, which may have been an indicator that her brain was not growing properly.
Jeffrey Lamkin, M.D., the opthamologist who was treating Montgomery, testified that Montgomery had "vitreous hemorrhages" in both eyes and had developed a cataract in her right eye, which was a very serious condition in an infant. Montgomery eventually had surgery on her right eye, and at the time of the trial, was awaiting surgery on her left eye.
Dr. Richard Steiner was the medical director of the C.A.R.E. Center at Children's. The C.A.R.E. Center is the part of Children's which evaluates abused or maltreated children. Dr. Steiner testified that:
 Shaken baby syndrome is a group of injuries that baby suffers when they are violently shaken. This constellation of injuries includes subdural hematoma with brain injury, includes retinal hemorrhages, includes fractures of the ribs and also fractures of the bones at the joints.
Dr. Steiner stated that some or all of the injuries may be present in "shaken baby syndrome" and that Montgomery had suffered two of the four injuries described.
Amy Richardson, M.D., Blondheim's expert witness, testified that by reading Montgomery's medical record, she was of the opinion that Montgomery exhibited evidence of "some pretty severe injury to her eyes."
Blondheim requests that this court reverse his sentences. However, this court may vacate or modify a sentence only if it clearly and convincingly finds that one of four conditions exist.State v. Miller (April 29, 1998), Summit App. No. 18465, unreported, at 3. These conditions are set forth in2953.08(G)(1)(a) through (d). We do not clearly and convincingly find that any of these conditions exist.
R.C. 2929.14 governs basic prison terms and provides in part:
 (A)(2) For a felony of the second degree, the prison term shall be two, three, four, five, six, seven, or eight years.
* * *
 (4) For a felony of the fourth degree, the prison term shall be six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, or eighteen months.
Therefore, pursuant to R.C. 2929.14, the trial court could have imposed a prison term of up to eight years on each of Blondheim's second degree felony convictions, and up to eighteen months on his fourth degree felony conviction. However, R.C.2929.14 further provides that:
 (B) [I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
The trial court made several comments regarding the seriousness of Blondheim's offense and the trial court's belief that Blondheim was likely to commit another offense in the future. The state argues that the trial court's comments on the record "implicitly" indicate that the court believed that a minimum sentence would demean the seriousness of Blondheim's conduct. We agree. At Blondheim's sentencing hearing, the trial court stated:
 THE COURT: Yes, this is a court of justice, and the court needs to have compassion. But there's no way that I can see my way to returning this Defendant to live with his family under the present circumstances.
* * *
 The fact of the matter is that a very serious injury, a life-threatening injury, was done to this child.
* * *
 I make my decision * * * on the events themselves, the serious life-threatening condition of the child at the time, and my conviction that in fact Mr. Blondheim did in fact commit this offense.
* * *
 In looking for just resolution, I looked somewhere for evidence that this Defendant and the family recognize and accept responsibility for what has happened, because without that, any counseling, any community control, anything that I put in place is not likely to be effective.
 The psychological report that I have received confirms my own observations that this family is in denial and not prepared to accept the responsibility for what has happened. The conclusions are that this defendant demonstrates a personality style characterized by denial, repression and minimizing problems, that he is unlikely to see himself as being in need of change or introspection.
 Under these circumstances, whatever happened is likely to reoccur, and I cannot possibly permit this defendant to return to his family[.]
The language of R.C. 2929.14 does not require an explicit
finding that either: 1) the shortest prison term will demean the seriousness of the offense; or 2) the shortest prison term will not adequately protect the public from future crime. This court has held that explicit findings are not necessary to satisfy the requirements of R.C. 2929.14. See State v. Crangle (Aug. 6, 1997), Summit App. No. 18268, unreported, at 3: State v. Miller
(April 29, 1998), Summit App. No 18645, unreported, at 4.
Our review of the record in this case reveals that the trial court had a basis for imposing the maximum sentence, and that it indicated its reason at the sentencing hearing. The trial court indicated on the record that it had authority under the new sentencing statute to sentence Crangle to the maximum penalty because this was his third conviction for a sexual offense against a child. By explicitly referring to the new statute and the fact that Crangle had two prior convictions for offenses similar to the one at issue, the trial court must have implicitly found that Crangle was an offender who posed a great likelihood of committing future crimes. We find no error in such a conclusion. The trial court, therefore, had authority under R.C. 2929.14(C) to impose the maximum sentence for Crangle's conviction of gross sexual imposition. Crangle's assignment of error is overruled.Crangle, supra, at 3.
Although the trial court did not explicitly recite the "magic words" set forth in R.C. 2929.14(B), we hold that R.C. 2929.14(B) does not require such "talismanic" words. See State v. Fincher
(Oct. 14, 1997) Franklin App. No. 97APA03-352, unreported. The trial court's comments and the record support a conclusion that the trial court found that a sentence of two years would demean the seriousness of Blondheim's crime. In addition, the trial court stated its belief that Blondheim was in denial and therefore likely to repeat his crimes. When viewing these comments in light of the testimony taken at Blondheim's trial and sentencing hearing, we conclude that the trial court must have made implicit
findings that a two-year sentence for the second degree felonies and a six-month sentence for the fourth degree felony would demean the seriousness of the crimes and that Blondheim posed a danger to Montgomery and others. Blondheim's first assignment of error is overruled.
 II.
Blondheim's second assignment of error is:
 THE TRIAL COURT COMMITTED PLAIN ERROR TO DEFENDANT-APPELLANT'S PREJUDICE BY FAILING TO MERGE THE COUNTS OF THE INDICTMENT FOR SENTENCING PURPOSES WHERE IT WAS CLEAR THAT THE COUNTS WERE ALLIED OFFENSES OF SIMILAR IMPORT.
Blondheim argues that the counts against him should have been merged for sentencing purposes, yet he failed to raise this issue before the trial court. Normally, an appellate court will not consider errors not raised at the trial level. State v. Combs
(Dec. 4, 1991), Summit App. No. 15025, unreported, at 3. A plain error is an error or defect that affects substantial rights and "may be noticed although [it was] not brought to the attention of the court." Crim.R. 52(B). An error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. State v. Campbell (1994), 69 Ohio St.3d 38,49, ceriorari denied (1994), 513 U.S. 913,130 L.Ed.2d 204; State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus. "`The plain error rule is to be invoked only in exceptional circumstances to avoid a miscarriage of justice[.]'"Id. at 95, quoting United States v. Rudinsky (C.A. 6, 1971),439 F.2d 1074, 1076.
Moreover, the record indicates that the crimes of felonious assault and endangering children were committed separately. See R.C. 2941.25(B). R.C. 2919.22(A) (child endangering) prohibits a parent from creating a substantial risk to a child by violating a duty of care, protection or support. R.C. 2919.22(B)(2) prohibits a person from torturing or cruelly abusing a child. R.C.2903.11(A)(1) (felonious assault) prohibits a person from knowingly causing serious physical harm to another. The record supports that Blondheim endangered six-week old Montgomery when he shook her (count one). There is evidence in the record that he again endangered baby Montgomery when he lied to her health care providers about the cause of her injuries, depriving them of essential medical history needed to assess and treat Montgomery (count two).
There is also evidence in the record to establish that Blondheim knowingly caused baby Montgomery serious physical harm. One doctor testified that Montgomery suffered a sudden impact injury in addition to the shaking injury. The trial court did not err in not merging the counts against Blondheim.
Assuming, arguendo, that the felonious assault and second degree felony endangering children counts are allied offenses of similar import, this court has held that there is no plain error where the sentences run concurrently. Combs, supra, at 3. Blondheim's second assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _________________________________ WILLIAM R. BAIRD, FOR THE COURT
SLABY, P. J.
MILLIGAN, J., CONCUR
(Milligan, J., retired Judge of the Fifth District Court of Appeals, sitting by assignment pursuant to Article IV, § 6(C), Constitution.)