DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant-appellant, Daniel Royston, a.k.a. David J. Roberts and Joseph Garrett, appeals the judgment of the Summit County Court of Common Pleas that convicted him of multiple felonies, adjudicated him to be a sexual predator, and pronounced sentence. We affirm.
On the evening of July 16, 1998, fifteen-year-old Alison Swartz, her friend Jennifer Selmon, also fifteen, and two other teenage girls befriended Defendant in a park after Ms. Swartz gestured to him to follow the car in which they were riding. Defendant, who was twenty-one years of age at that time, accompanied the young women to Swartz's home in the Ellet neighborhood of Akron. During the course of the evening, Defendant and Swartz became physically intimate, then exchanged pager numbers before Defendant left in the early hours of the morning. Later that morning, the Swartz family left Akron for a weeklong vacation in Canada. Ms. Selmon had agreed to care for the family pets while the Swartzes were vacationing. Beginning on Monday, July 17, 1999, Ms. Selmon's mother drove her to the Swartz residence after her summer school classes were completed. After tending to the pets, Ms. Selmon walked to her nearby home.
Ms. Selmon arrived at the Swartz residence shortly after her classes adjourned on Tuesday, July 18, 1999. Later that evening, Defendant arrived at the home. When Ms. Selmon opened the front door, Defendant asked if Alison Swartz was present. Ms. Selmon stated that she was not. At this, Defendant entered the house, closed the door behind him, and locked the door. According to Ms. Selmon's testimony, Defendant then locked the rear entrance to the house. After a short period of time, Defendant attempted to initiate physical intimacy with Ms. Selmon, who refused. He persisted despite Ms. Selmon's objections, removed her clothing, then raped her. After several hours, Defendant smoked a cigarette, attempted to make a phone call, and left the residence.
In connection with this incident, Defendant was charged with two counts of forcible rape in violation of R.C. 2907.02(A) (2), a felony of the first degree; one count of attempted rape in violation of R.C. 2923.02 and 2907.02(A) (2), a felony of the second degree; one count of aggravated burglary in violation of R.C. 2911.11(A) (2), a felony of the first degree; one count of kidnapping in violation of R.C. 2905.01(A) (4), a felony of the first degree; one count of gross sexual imposition in violation of R.C. 2907.05(A) (1), a felony of the fourth degree; and one count of corruption of a minor in violation of R.C. 2907.04, a felony of the fourth degree. Following trial to a jury, Defendant was convicted of all charges. The trial court adjudicated him a sexual predator and sentenced him to an aggregate prison term of thirty-one years.
Defendant timely appealed. He has raised twelve assignments of error, which are reorganized for ease of disposition.
 ASSIGNMENT OF ERROR I
The trial court erred on multiple evidentiary issues in violation of the applicable provisions of the Ohio Rules of Evidence and [Defendant's] right to a fair trial under the Due Process Clause of the United States and Ohio Constitutions.
In his first assignment of error, Defendant has argued that the trial court erred by admitting hearsay testimony with respect to statements made by Ms. Selmon contemporaneously with the rape. He has also maintained that evidence of Ms. Selmon's state of mind after the incident should have been excluded as irrelevant and prejudicial. Although Defendant voiced a continuing objection to John Reidlinger's testimony, he did not object to similar testimony by other witnesses. As such, this court will only recognize his later objections to the extent that the trial court's action constituted plain error. State v. Campbell (1994),69 Ohio St.3d 38, 40-41; Crim.R. 52(B). We recognize plain error only in the rare case where, but for the alleged error, the outcome of the proceeding would have been different. State v.Long (1978), 53 Ohio St.2d 91, paragraphs two and three of the syllabus. Under the circumstances of this case, however, we conclude that any error was harmless beyond a reasonable doubt.
An out-of-court statement, offered for its truth, is inadmissible hearsay unless it falls into one of the exceptions recited in Evid.R. 803. Evid.R. 802 and 803. Defendant has argued that the trial court erred in admitting testimony by several witnesses with respect to statements made to them by Ms. Selmon recounting the details of the assault. Assuming, arguendo, that this testimony constituted hearsay outside the scope of any exception provided by Evid.R. 803, the erroneous admission of hearsay evidence does not justify reversal where any error was harmless. State v. Carter (1995), 72 Ohio St.3d 545, 550. See, generally, Crim.R. 52(A). When hearsay testimony is essentially cumulative to a declarant's in-court testimony, any resulting error is harmless. State v. Tomlinson (1986), 33 Ohio App.3d 278,281.
Ms. Selmon testified at trial with respect to the rape and the events that led up to it. After she testified, John Reidlinger, who was dating Ms. Selmon at the time, testified that she described the rape to him two days after it occurred. The State also called Ms. Selmon's mother, Mr. Reidlinger's mother, an emergency room physician, and the investigating officers, each of whom described statements made by Ms. Selmon to them after the rape. Because the substance of their testimony was duplicative of Ms. Selmon's own statements on direct and cross-examination, any error in admitting the testimony was harmless beyond a reasonable doubt. See State v. Tramble (Jan. 27, 1999), Lorain App. No. 97CA006928, unreported, at 4. Defendant's first argument, therefore, lacks merit.
Defendant has also argued that the trial court incorrectly permitted testimony that described Ms. Selmon's emotional and mental state following the attack. Specifically, he has asserted that this testimony should have been excluded as irrelevant and, in the alternative, that its admission was barred by Evid.R. 403(A).
Evidence is relevant to the extent that it tends to make the existence of any fact necessary to the determination more or less probable. Evid.R. 401. Evid.R. 402 provides that relevant evidence is admissible unless otherwise specifically excluded. Absent an abuse of discretion, this court will not second-guess the trial court's conclusion that evidence is admissible pursuant to Evid.R. 402. See State v. Blankenship (1995), 102 Ohio App.3d 534,549. Ms. Selmon testified at trial that Defendant raped her despite her repeated protestations. Defendant testified that while he did engage in sexual intercourse with Ms. Selmon, the activity was wholly consensual. The absence of consent, therefore, was paramount in the determination of this case. Evidence indicating that Ms. Selmon was variously listless, noncommunicative, tearful, and distraught tends to make more probable her testimony that she did not consent. The trial court's admission of this testimony did not constitute an abuse of discretion.
Relevant evidence, however, is inadmissible if its probative value is substantially outweighed the risk of unfair prejudice. Evid.R. 403(A). "When considering evidence under Evid.R. 403, the trial court is vested with broad discretion and an appellate court should not interfere absent a clear abuse of that discretion."State v. Allen (1995), 73 Ohio St.3d 626, 633. Defendant has not demonstrated that a clear abuse of discretion occurred in this case.
Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR V
The jury verdict finding [Defendant] guilty of two counts of rape, attempted rape, kidnapping, aggravated burglary, gross sexual imposition, and corruption of a minor was against the manifest weight of the evidence in violation of the Due Process Clause of the United States Constitution and Article I, Section 16 of the Ohio Constitution.
In his fifth assignment of error, Defendant has maintained that his convictions were against the manifest weight of the evidence. We disagree.
In determining whether a conviction was against the manifest weight of the evidence, we must:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. In effect, an appellate court that overturns a jury verdict as against the manifest weight of the evidence acts as a "thirteenth juror," setting aside the resolution of evidence and testimony as found by the trier of fact. State v. Thompkins (1997), 78 Ohio St.3d 380,387. This action is reserved for the exceptional case where the evidence weighs heavily in favor of the defendant. State v.Otten, 33 Ohio App.3d at 340.
Ms. Selmon testified at trial that she met Defendant on the evening before Alison Swartz left for vacation. Ms. Selmon recalled that Defendant returned to Alison's home with Ms. Selmon, Alison, and two other friends. She stated that Defendant was in the home until approximately 2:00 a.m., and that during this time Defendant and Alison were kissing on the couch. Before leaving, Defendant exchanged pager numbers with Alison, who gave his pager number to Ms. Selmon in case she wanted to reach him while Alison was out of town. Ms. Selmon stated that she did not engage in any physical intimacy with Defendant at that time.
Ms. Selmon recalled that she returned to the Swartz residence the following evening. She stated that Defendant came to the house after she had cared for the animals. She recalled that she opened the door "a little bit," but that Defendant "kind of like pushed his way into the house and locked the door behind him." After entering the home, Defendant went upstairs and then locked the back door. At that time, Ms. Selmon noted that he was carrying a silver or chrome knife. In a letter written to John Reidlinger after the incident, she stated that she "saw the knife in his pocket and the look on his face scared [her] to death." She recalled that Defendant sat down on the living room couch, opened the knife, and ran the blade up and down her thigh.
She recalled that Defendant began kissing her neck and that she asked him to stop. He did not comply with her request. Instead, he asked her to remove her shirt. When she refused, he removed her shirt, then the remainder of her clothing. She stated that, at that point, they "ended up on the floor." She reiterated that she refused each time he asked to remove an article of clothing, but that he persisted. Ms. Selmon recalled that Defendant fondled her breasts and then bit her. At that point, Defendant penetrated her digitally and attempted oral penetration. Ms. Selmon recalled as follows:
Q: * * * did anything else happen?
A: He tried to go down on me.
Q: And when you would say that, with his mouth?
A: Yes.
Q: And what did you do?
 A: I closed my legs really tight around his neck and he stopped.
* * *
 He put his hands around my neck and pushed me against the floor.
Ms. Selmon testified that Defendant then left the room. While he was gone, she got dressed. Defendant returned wearing a condom, then proceeded to undress her once again. Finally, Defendant engaged in sexual intercourse with Ms. Selmon.
On July 19, 1998, Ms. Selmon was examined by Dr. David Custodio. Dr. Custodio testified that bruising on her body was consistent with both the timeframe and the version of events that she had described. Although his examination did not reveal evidence of vaginal trauma, Dr. Custodio opined that it is not unusual for a rape victim to display no indications of such trauma. Dr. Custodio noted that Ms. Selmon was visibly shaken throughout the examination.
Defendant has argued Ms. Selmon's testimony was in conflict with that of the other witnesses and, therefore, that his convictions are against the manifest weight of the evidence.[1] Defendant stated that he was aware on the night he met Ms. Selmon that she and Alison were of high school age, "around 16, 17, 18." He testified that Ms. Selmon paged him on the following Monday evening then again on the night in question. He maintained that she willingly allowed him to come into the house. He acknowledged that he had sexual intercourse with Ms. Selmon, but averred that it was purely consensual and that Ms. Selmon had retrieved a condom from another room beforehand. Alison Swartz stated that Ms. Selmon knew that she kept condoms in her bedroom, but that Defendant could not have known this fact. She also confirmed that she had been attracted to Defendant, was interested in pursuing a relationship with him, and had corresponded with him after the incident occurred.
Brian Frye, who lived near the Swartz residence, testified on behalf of Defendant. He stated that he saw Defendant's car at the home several times before and after the incident. At trial, he positively stated that Defendant drove a silver car. In a prior interview with police, however, Mr. Frye could not recall whether the car was red or silver. He acknowledged that Alison Swartz had informed him that the car was silver after his statement to the police, but prior to his testimony in court. Mr. Frye also conceded that Alison Swartz had approached him about this information "to help Dan out in court." Although Mr. Frye also stated that he saw Ms. Selmon and Defendant in an embrace through a window that faced his home, other testimony indicated that the window in question was covered with a curtain and was partially obscured by trees.
"[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony."State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, unreported, at 4. Although Defendant's testimony contradicted the evidence produced by the State, a review of the record indicates that this is not the exceptional case in which the weight of the evidence warrants a new trial.
 ASSIGNMENT OF ERROR II
The State failed to establish beyond a reasonable doubt the necessary elements of rape (R.C. 2907.02(A) (2)) (two counts), kidnapping (2905.01(A) (4)), and gross sexual imposition (R.C.2907.05) thereby violating [Defendant's] right to Due Process of Law under the United States and Ohio Constitutions.
 ASSIGNMENT OF ERROR III
The State failed to establish beyond a reasonable doubt the necessary elements of attempted rape (R.C. 2907.02(A) (2) [and] R.C. 2923.02) thereby violating [Defendant's] right to Due Process of Law under the United States and Ohio Constitutions.
 ASSIGNMENT OF ERROR IV
The State failed to establish beyond a reasonable doubt the necessary elements of aggravated burglary (R.C. 2911.11(A) (2) thereby violating [Defendant's] right to Due Process of Llaw under the United States and Ohio Constitutions.
In his second, third, and fourth assignments of error, Defendant has argued that his convictions were not supported by sufficient evidence. "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by theweight of the evidence must necessarily include a finding of sufficiency." State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, at 4. Accordingly, Defendant's second, third, and fourth assignments of error are overruled.
 ASSIGNMENT OF ERROR VI
In instructing the jury on the kidnapping charge, the trial court erred in failing to instruct that [Defendant] had released the complaining witness in a safe place unharmed in violation of [Defendant's] right to Due Process of Law under the United States and Ohio Constitutions.
Defendant's sixth assignment of error alleges that the trial court's failure to instruct the jury to consider whether Ms. Selmon was released "unharmed" within the meaning of R.C.2905.01(C) constituted plain error. We disagree Defendant did not pursue this objection in the trial court. Pursuant to Crim.R. 30(A), a party may not assign the failure to give a jury instruction as error on appeal unless a specific objection was made prior to the commencement of jury deliberations. Accordingly, "[t]he failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Underwood (1983), 3 Ohio St.3d 12, syllabus.
Kidnapping, in violation of R.C. 2905.01, is a felony of the first degree unless "the offender releases the victim in a safe place unharmed[.]" R.C. 2905.01(C). The fact that a rape occurred is ample evidence of the harm contemplated by R.C.2905.01(C). State v. Avery (1998), 126 Ohio App.3d 36, 44. See, also, State v. Brant (Sept. 22, 1995), Portage App. No. 94-P-0117, unreported, 1995 Ohio App. LEXIS 4121 at *10 (noting that Ohio courts have consistently determined that rape itself constitutes harm). Defendant's sixth assignment of error is overruled.
 ASSIGNMENT OF ERROR VII
[Defendant] was deprived of his right to effective assistance of counsel in violation of the Fifth andSixth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.
Defendant has argued in his seventh assignment of error that trial counsel's performance was ineffective in that he (1) failed to object to inadmissible testimony, including hearsay statements and statements with respect to Ms. Selmon's mental state following the rape, and (2) failed to pursue a reduction in Defendant's kidnapping conviction pursuant to R.C. 2905.01(C). These assertions are without merit.
To demonstrate ineffective assistance of counsel, a defendant must show deficiency in the performance of counsel "so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington
(1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 693. As discussedsupra, the allegations set forth in this assignment did not constitute error. It follows, therefore, that failure to object to these items does not demonstrate that counsel's performance was deficient. Defendant's seventh assignment of error is overruled.
 ASSIGNMENT OF ERROR VIII
The trial court erred in entering a judgment of conviction for both counts of rape and attempted rape and in imposing multiple sentences in violation of [Defendant's] rights under the Double Jeopardy Clause of the Fifth Amendment to the United states Constitution and Article I, Section 10 of the Ohio Constitution and Ohio's multiple counts statute, R.C.2941.25.
 ASSIGNMENT OF ERROR IX
The trial court erred in entering a judgment of conviction for both counts of rape, attempted rape, and kidnapping and in imposing multiple sentences in violation of [Defendant's] rights under the Double Jeopardy Clause of the Fifth Amendment to the United states Constitution and Article I, Section 10 of the Ohio Constitution and Ohio's multiple counts statute, R.C. 2941.25.
 ASSIGNMENT OF ERROR X
The trial court erred in entering a judgment of conviction for both counts of rape, attempted rape, and gross sexual imposition and in imposing multiple sentences in violation of [Defendant's] rights under the Double Jeopardy Clause of theFifth Amendment to the United states Constitution and ArticleI, Section 10 of the Ohio Constitution and Ohio's multiple counts statute, R.C. 2941.25.
In his eighth, ninth, and tenth assignments of error, Defendant has argued that the trial court incorrectly sentenced him to multiple prison terms for allied offenses of similar import. Defendant did not raise the issue of merger before the trial court. As such, this court will only recognize his later objections to the extent that the trial court's action constituted plain error. State v. Campbell, 69 Ohio St.3d at 40-41; Crim.R. 52(B).
R.C. 2941.25(A) provides:
 Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
The determination of whether two offenses are of similar import is limited to an objective analysis of the statutory provisions at issue to determine whether the elements of the charged offenses "correspond to such a degree that the commission of one crime will result in the commission of the other." State v. Blankenship
(1988), 38 Ohio St.3d 116, 117. This statutory analysis is performed in the abstract, focusing solely on the elements of the offenses charged without reference to the facts of the particular case. State v. Rance (1999), 85 Ohio St.3d 632, paragraph one of the syllabus.
If the elements of the statutes do not correspond to this degree, "the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are permitted." Id. at 636. If the court determines that two offenses are allied offenses of similar import, it must proceed to examine the facts of the case to determine whether the crimes were committed separately or with a separate animus. State v. Blankenship,38 Ohio St.3d at 117. If offenses of similar import are committed separately or with a separate animus, a defendant may be punished for both. State v. Rance, 85 Ohio St.3d at 636; R.C. 2941.25(B).
Defendant's eighth and tenth assignments of error argue that the trial court incorrectly failed to merge his convictions for two counts of rape and attempted rape and gross sexual imposition. He correctly asserts that in the abstract, the elements of rape and attempted rape correspond to such a degree as to make the commission of rape impossible without the commission of attempted rape. State v. Jones (1997), 78 Ohio St.3d 12, 13. The trial court, however, ordered that the sentences for each of these offenses are to run concurrently with the others. Assuming,arguendo, that rape and gross sexual imposition also constitute allied offenses, this court has concluded that plain error does not result when concurrent sentences are imposed for crimes that constitute allied offenses of similar import. State v. Martin
(Feb. 9, 1999), Summit App. No. 18715, unreported, at 4-5. Defendant's eighth and tenth assignments of error are without merit.
Defendant has also argued that the trial court erred by sentencing him for rape and attempted rape and for kidnapping. We disagree.
R.C. 2905.01(A) (4) prohibits the restraint of any person, by force, threat, or deception, for the purposes of engaging in sexual activity against the victim's will. Kidnapping, in violation of R.C. 2905.01(A) (4), and rape, in violation of R.C.2907.02(A) (2), are allied offenses of similar import. State v.Price (1979), 60 Ohio St.2d 136, paragraph five of the syllabus.[2] These offenses are committed with a separate animus:
 where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense * * * [or] [w]here the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime[.]
State v. Logan (1979), 60 Ohio St.2d 126, syllabus.
In this case, Defendant pushed his way into the Swartz's home and proceeded to lock the front and back doors. Ms. Selmon observed that he was carrying a knife and recalled that she felt confined and frightened that she could not get away from Defendant. Defendant kept Ms. Selmon confined to the home for several hours; during that time he perpetrated numerous sexual offenses against her. After the offenses occurred, Defendant informed Ms. Selmon that "the last person that just laid there he killed[.]" These circumstances support the conclusion that Ms. Selmon was restrained for an extended period not merely incidental to the rape and that the restraint subjected her to an increased risk of physical danger. Defendant's tenth assignment of error is overruled.
 ASSIGNMENT OF ERROR XI
The trial court abused its discretion in imposing consecutive maximum sentences without consideration of the statutory criteria set forth in Ohio Revised Code 2929.11, 2929.12, [and] 2929.13 and in violation of [Defendant's] right to Due Process of Law under the United States and Ohio Constitutions.
In his eleventh assignment of error, Defendant has argued that the trial court incorrectly sentenced him to the maximum prison terms permitted by law for each offense and ordered portions of the sentence to be served consecutively. He has also argued that there is insufficient evidence to support the trial court's findings. These contentions are without merit.
In conducting sentencing for a felony of the fourth or fifth degree, the trial court must determine whether one of the factors enumerated in R.C. 2929.13(B) (1) is present. These factors include the characterization of the offense as a fourth or fifth degree felony sex offense among those listed in R.C.2929.13(B) (1) (f), including gross sexual imposition, in violation of R.C. 2907.05, and corruption of a minor, in violation of R.C.2907.04. If the trial court finds that one of these factors is present, that a prison term is consistent with the purposes of sentencing, and that the defendant is not amenable to community control, a prison term must be imposed. R.C. 2929.13(B) (2) (a). In making these determinations, the trial court must consider all relevant factors, including the factors affecting the seriousness of the offenses and the potential of the offender for recidivism found in R.C. 2929.12(B) through (E). R.C. 2929.12(A). Although R.C. 2929.13(D) establishes a presumption in favor of imposing a prison term for felonies of the first and second degree, the trial court may elect to impose community control if appropriate considering the offender's potential for recidivism and the seriousness of the offense. R.C. 2929.13(D).
In this case, the trial court stated in its sentencing entry that Defendant is not amenable to community control and that prison is consistent with the purposes of sentencing. At the hearing, the trial court noted the serious physical and psychological harm that resulted to Ms. Selmon and Defendant's lack of genuine remorse. See R.C. 2929.12(B) (2) and (D) (5). Accordingly, Defendant's contention that the trial court did not properly consider the statutory factors in electing to impose prison terms is without merit. The record supports the trial court's determination in this respect.
A trial court may impose the maximum authorized prison term for a felony upon an offender who has previously served a prison term when the court finds that the defendant committed the worst form of the offense or poses the greatest likelihood of committing future crimes. R.C. 2929.14(C). In addition, if the court finds that consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and are necessary to protect the public from future crime or to punish the offender, the court may impose consecutive sentences if:
* * *
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct[;] [or]
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
R.C. 2929.14(E) (3).
The trial court stated in its journal entry that a maximum sentence was necessary because Defendant posed the greatest likelihood of recidivism and had committed the worst form of the offenses. See R.C. 2929.14(C). The court also concluded that consecutive sentences were not disproportionate to Defendant's crimes and were necessary to protect the public from future conduct by him. The court noted Defendant's history on the record, observing:
 Your history shows multiple contempts, and that concerns me greatly. It indicates that you have an attitude that does not show respect to the court, nor do you live up to any obligation to abide by court orders.
* * *
 All the facts and circumstances in this case indicate that there is the greatest likelihood that you will continue to repeat similar offenses, that you will continue to be a danger to the community * * *. You used the weapon to terrorize. You did great psychological injury, as well as physical injury to [Ms. Selmon].
The journal entry and record of sentencing in this case indicate that the trial court complied meticulously with the statutory sentencing guidelines and that its conclusions were supported by the record. Defendant's eleventh assignment of error, therefore, is overruled.
 ASSIGNMENT OF ERROR XII
The trial court erred in finding that there was sufficient evidence to adjudicate [Defendant] a sexual predator pursuant to R.C. 2950.01 and R.C. 2950.09.
In his final assignment of error, Defendant has argued that the trial court's determination that he is a sexual predator is not supported by sufficient evidence. We disagree.
R.C. 2950.01(E) defines a sexual predator as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." In making this determination, the trial court must consider all relevant factors, including:
The offender's age;
 The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
Any mental illness or mental disability of the offender;
 The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 Any additional behavioral characteristics that contribute to the offender's conduct.
R.C. 2950.09(B) (2). On appeal, this court must review whether the evidence presented at the hearing, if believed, was sufficient to lead a reasonable trier of fact to conclude by clear and convincing evidence that the defendant is a sexual predator.State v. Duvall (Dec. 30, 1998), Lorain App. No. 97CA006863, unreported, at 4. See, also, State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
In making its determination, the trial court noted that Ms. Selmon was a minor at the time of the offense; that Defendant displayed no remorse for his actions; and that Defendant brandished a knife during the attack, "which effectively terrorized the victim and displayed an element of cruelty and * * * intent to not only inflict the offenses on the victim, but to do so in a manner which terrorized her." The court also referenced its findings during the sentencing portion of the hearing, in which it noted Defendant's refusal to accept responsibility for his actions and the high likelihood of recidivism that he posed. These factors were sufficient to establish, by clear and convincing evidence, that Defendant is a sexual predator. His twelfth assignment of error is overruled.
Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
 KK The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 LYNN C. SLABY FOR THE COURT BAIRD, P.J.
BATCHELDER, J.
CONCUR
[1] Defendant has not provided citations to the record in support of this assignment of error. See App.R. 16(A) (7).
[2] R.C. 2907.02(A) (2) was formerly found in R.C.2907.02(A) (1).