JOURNAL ENTRY and OPINION
Appellant Ronald Stafford appeals the decision of the trial court convicting him of kidnapping and attempted felonious assault and sentencing him accordingly. Stafford assigns the following two errors for our review:
 I. RONALD STAFFORD WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, BY COUNSEL'S FAILURE TO KEEP IMPROPER VICTIM IMPACT TESTIMONY OUT OF THE TRIAL.
 II. RAYMOND SHERMAN (sic) HAS BEEN DEPRIVED OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW BY HIS CONVICTION FOR ATTEMPTED FELONIOUS ASSAULT, WHEN SAID CONVICTION WAS NOT SUPPORTED BY EVIDENCE SUFFICIENT TO PROVE HIM GUILTY BEYOND A REASONABLE DOUBT.
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
On January 29, 1998, Rayshawn Bowers arrived home after working the 7:00 pm to 7:00 am shift at her job as a registered nurse. Bowers received a phone call from appellant Ronald Stafford inviting her to breakfast. Bowers accepted and the two drove to a local restaurant, then took the food back to Stafford's apartment to eat it. Once at the apartment, the pair consumed their breakfast in the dining room, then retired to the bedroom to sleep.
Bowers had just about fallen asleep when Stafford awakened her and complained that his chest was hurting. Bowers asked him what was wrong and placed her hand on his chest. Stafford replied that he felt like the relationship was killing him. He then accused Bowers of seeing another man. Bowers replied that she was tired and did not want to have the discussion. Thereafter, she backed off the bed to get her shoes. As she bent over to retrieve her shoes, Stafford pushed her from behind, causing her head to strike the bedroom wall. As Bowers turned around, Stafford grabbed her and pulled her toward the middle of the room, then threw her to the floor. Stafford kicked Bowers in the stomach and chest, then dragged her across the floor by the hair. Stafford then sat on Bowers' chest, pinned her elbows to the floor with his knees and spat in her face.
As Bowers screamed and cried, Stafford yelled at her to shut up, saying that he would cut her hair off. He also stated that he knew where her son went to school. Using both his hands, Stafford pushed Bowers' chin upwards while pressing down across the bridge of her nose so her mouth closed. Bowers feared for her life as Stafford's weight on her chest made it difficult for her to breathe.
After some time, police knocked on the door. When he heard the knocking, Stafford told Bowers to be quiet but Bowers struggled to free herself and to make noise in an attempt to alert the police. Having failed to receive a response to their knocks at the door, police kicked the door in and entered the apartment. At this point, Stafford got up and exited the bedroom. Bowers exited the bedroom and went in the opposite direction.
Apartment manager Colleen Lofters testified that she received a call from Stafford's downstairs neighbor, Ronald Washington, complaining of a fight going on in Stafford's apartment. Lofters took Washington's complaint and told Washington to call her again if the disturbance continued. In response to Washington's complaint, Lofters called Stafford's apartment but did not receive an answer. When Washington called again, several minutes later, Lofters told him that she had tried unsuccessfully to reach Stafford by phone.
Thereafter, Washington called 911 to report the altercation. Several minutes later, he called back a second time. When police arrived, Washington invited them into his apartment to listen to the noise coming from the upstairs apartment. Officer Christopher Frey went upstairs and listened outside of Stafford's door. Frey heard a woman wimpering and a deeper male voice. Frey knocked on the door and identified himself as a police officer but received no response.
Frey called his supervisor, Lieutenant James Oryl, to report his observations. Oryl arrived and contacted the apartment manager to come and open the apartment's door. Apartment manager Colleen Lofters went to the apartment, knocked on the door, and called out to Stafford. When there was no answer, police knocked loudly on the door with a baton, identified themselves as police, and called out to Stafford. When Stafford again failed to answer, Lt. Oryl instructed Lofters to unlock the door. She did so and police attempted to open the door but found that an inside chain lock was engaged. After again announcing themselves as police but receiving no response, the officers kicked in the door and entered the apartment.
Once inside, police spotted Stafford exiting the bedroom. Officer Frey ordered him to lie down on the floor. Shortly, thereafter, Bowers emerged. Officer Frey noticed Bowers was "visibly shaken" and crying and observed her "in a huddled position" in the hallway of the apartment. [Tr. 230.] Lt. Oryl noted that Bowers was visibly shaken and observed bruises and scratch marks on her neck and arms. Stafford was arrested.
After the incident, Bowers went to the home of her aunt, Renee Brooks. Brooks noticed Bowers was crying, that her hair was disheveled, and that her neck was bruised. Bowers grimaced as she entered Brooks' apartment, walking slowly and bending over. When asked what happened, Bowers replied that Stafford attacked her. After about 40 minutes, the pair went to the hardware store where Bowers purchased wooden poles to wedge the windows of her apartment closed.
Stafford was charged with kidnapping and felonious assault. He waived his right to a jury trial and agreed to have the trial court decide the case. Bowers, Brooks, Washington, Frey, and Oryl all testified for the state. Stafford's minister testified as to Stafford's good character and Stafford testified in his own defense, claiming that Bowers had been the aggressor in the altercation. The trial court convicted Stafford of kidnapping. Finding insufficient evidence of serious physical harm, the trial court convicted Stafford of attempted felonious assault. Stafford was sentenced to three years in prison for kidnapping and a concurrent one year term for attempted felonious assault. This appeal followed.
Before we address Stafford's assigned errors, we are compelled to respond to Stafford's attorney's argument that the statements of the prosecution during opening and the victim's testimony constituted improper impact testimony at the guilt phase of the proceedings. We disagree with the attorney's characterization of the prosecution's statement and the victim's testimony. Both the statement and the victim's testimony went to the crimes of felonious assault and kidnapping and to the victim's state of mind. Accordingly, we conclude that neither the statement nor the testimony constituted victim impact testimony at the guilt phase of the proceeding.
In his first assignment of error, Stafford argued the trial court erred in allowing the prosecution to present improper victim impact testimony at trial. During her opening statement, the prosecutor made the following statements:
 Your Honor, I have a very strange, somewhat not everyday question to ask, but have you ever asked yourself this question, what would be my last thoughts if I thought I was about to die. If people ever asked themselves that question. I've been blessed, I've never been in a situation where I've been that close where I've asked that question. But because of what this defendant did, Rayshawn Bowers had to ask herself that question and that's why we are here today, your Honor, because of what this defendant did to Rayshawn Bowers on the date of January the 29th, 1998.
(Tr. 5-6.)
Stafford also objects to testimony by Bowers that, during the attack, she feared for her life and wondered who would take care of her children. Stafford also challenges Bowers' testimony that she thought of how her death would "kill" her mother and that it would be a "horrible thing" for her ex-husband to find her dead.
Stafford argues his trial counsel was ineffective for failing to object to the testimony. In order to establish ineffective assistance of counsel, an appellant must demonstrate that trial counsel's performance was deficient and that the deficient performance so prejudiced the defense as to deny the appellant a fair trial. State v. Smith (2000), 87 Ohio St.3d 424, 439, citingStrickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 and State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, certiorari denied (1990),497 U.S. 1011, 111 L.Ed.2d 768, 110 S.Ct. 3258. In order to establish prejudice, appellant must show a reasonable probability that, but for trial counsel's errors, the outcome of the trial would have been different. State v. Bays (1999), 87 Ohio St.3d 15, 27,716 N.E.2d 1126, 1140, reconsideration denied (1999), 87 Ohio St.3d 1454,719 N.E.2d 969. A reviewing court need not consider both prongs of the Strickland test if a defendant fails to satisfy one of the prongs. State v. Madrigal (2000), 87 Ohio St.3d 378, 389, citing Strickland, 466 U.S. at 697, 104 S.Ct. at 2069,80 L.Ed.2d at 699.
When determining whether trial counsel's failure to object constituted ineffective assistance of counsel, we must consider the fact Stafford was tried before a judge. Even if the challenged testimony was improper, in a bench trial, the court is presumed to have considered only relevant, material, and competent evidence. State v. Post (1987), 32 Ohio St.3d 380, 384,513 N.E.2d 754, 759, certiorari denied (1988), 484 U.S. 1079,98 L.Ed.2d 1023, 108 S.Ct. 1061; State v. Rainey (July 3, 1996), Lorain App. No. 95CA006297, unreported. Accordingly, trial counsel's failure to object could reflect an assumption that the trial court would not be affected by any inflammatory material.State v. Bays (1999), 87 Ohio St.3d 15, 30; 716 N.E.2d 1126,1131, reconsideration denied (1999), 87 Ohio St.3d 1454,719 N.E.2d 969, citing State v. Campbell (1994), 69 Ohio St.3d 38,43, 630 N.E.2d 339, 346, certiorari denied (1994), 513 U.S. 913,130 L.Ed.2d 204, 115 S.Ct. 289.
In his second assignment of error, Stafford challenges the sufficiency of the evidence presented in support of his conviction for attempted felonious assault. When examining the sufficiency of evidence presented in support of a criminal conviction, a reviewing court must determine whether any rational factfinder, after viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Clemons (1998),82 Ohio St.3d 438, 444, 696 N.E.2d 1009, certiorari denied (1999), 525 U.S. 1077, 142 L.Ed.2d 675, 119 S.Ct. 816, citingState v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus, rehearing denied (1991), 62 Ohio St.3d 1410,577 N.E.2d 362.
Attempted felonious assault is committed when a person knowingly attempts to cause serious physical harm to another. R.C. 2903.11(A)(1); R.C. 2923.02. Stafford argues that the state failed to prove that Stafford intended to cause serious physical harm. He argues that the trial court improperly based his conviction upon its finding that serious physical harm "may" have resulted from Stafford's actions. Stafford argues his crime was only simple assault since he caused physical harm to Bowers, not serious physical harm.
R.C. 2901.01(A)(5) defines serious physical harm as follows:
 (a) Any mental illness or condition of such gravity as would normally required hospitalization or prolonged psychiatric treatment; (b) Any physical harm that carries a substantial risk of death; (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; (d) Any physical harm that involves some permanent disfigurement, or that involves some temporary, serious disfigurement; (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering, or that involves any degree of prolonged or intractable pain.
State v. Clark (Sep. 28, 1999), Franklin App. No. 98-AP1650, unreported.
In this case, the trial court found that the state's evidence would not support a finding that Bowers suffered serious physical harm but that the state's evidence supported a finding that Stafford "attempted to cause serious physical harm [a]nd but for the intervention of others, like the police and the landlord, the conduct may have resulted in serious physical harm." (Tr. at 396.) Bowers was rendered unable to breathe when Stafford used both his hands to apply pressure to her chin and nose as he sat on her chest. Bowers testified that Stafford did not release her until the police forced their way into the apartment. Based upon this evidence, a reasonable factfinder could conclude that Bowers intended to asphyxiate Bowers by forcibly impairing her breathing. The state's evidence supported the trial court's conclusion that Stafford attempted to cause serious physical harm to Bowers. Stafford's second assignment of error is overruled.
Finding no merit to either of Stafford's assignments of error, we affirm the decision of the trial court.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, A.J., and MICHAEL J. CORRIGAN, J., CONCUR.
 ___________________________________ PATRICIA ANN, JUDGE