[Cite as *State v. Kalman*, 2016-Ohio-5013.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Sheila G. Farmer, P. J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 15 COA 041 |
| MARK E. KALMAN | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:    Criminal Appeal from the Court of Common
                            Pleas, Case No.  15 CRI 083


JUDGMENT:                   Affirmed in Part; Reversed in Part
                            and Remanded


DATE OF JUDGMENT ENTRY:     July 18, 2016


APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

CHRISTOPHER R. TUNNELL              MATTHEW J. MALONE
PROSECUTING ATTORNEY                LAW OFFICES OF MATTHEW J. MALONE
CHRISTOPHER E. BALLARD              10 East Main Street
ASSISTANT PROSECUTOR                Ashland, Ohio  44805
110 Cottage Street, Third Floor
Ashland, Ohio  44805

*Wise, J.*

{¶1} Defendant-Appellant Mark E. Kalman appeals from his conviction on several drug-related charges in the Court of Common Pleas, Ashland County. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows:

{¶2} In the months leading up to early June 2015, law enforcement investigators were tracking unusual purchases of pseudoephedrine by Appellant Kalman and his girlfriend, Lorie McLaughlin, at a number of retail locations throughout northern Ohio. Finally, on June 9, 2015, officers from the Ashland County Sheriff's Office, Lorain County Sheriff's Office, and the Ohio Bureau of Criminal Investigation executed a search warrant at 100 State Route 58 in Sullivan, Ohio. The officers suspected this address, primarily the residence of appellant's mother, Ruth Kalman, was also being used by appellant and his seventeen-year-old son, B.K. The property in question included a house, a camper in the back yard, and a beached boat with marihuana plants growing inside.

{¶3} Upon discovering items beyond the scope of the search warrant, the officers obtained an expanded second warrant. The search resulted in, among other things, marihuana plants, firearms, and supplies for the manufacture of methamphetamine and hashish.

{¶4} On July 10, 2015, the Ashland County Grand Jury indicted appellant on two counts of illegal manufacture of drugs (R.C. 2925.04), felonies of the first degree; illegal assembly or possession of chemicals for the manufacture of drugs (R.C. 2925.041), a felony of the second degree; illegal assembly or possession of chemicals for the manufacture of drugs (R.C. 2925.041), a felony of the third degree; having weapons under disability (R.C. 2923.13), a felony of the third degree; illegal cultivation of

marihuana (R.C. 2925.04), a misdemeanor of the fourth degree; and possessing drug abuse instruments (R.C. 2925.12), a misdemeanor of the second degree.

{¶5} The case proceeded to a jury trial from September 8 through September 10, 2015. At said trial, appellant did not dispute that marihuana plants, firearms, and evidence of a meth lab were present at the State Route 58 residence; however, his defense asserted that he did not live at said address, and that he was otherwise not responsible for any of the alleged criminal activity at that location. The State presented eleven witnesses: Detective Olen Martin of the Lorain County Drug Task Force; Sergeant Timothy Kitts of the Ashland County Sheriff's Office; Agent Jared Prill of the Ohio BCI; Theresa Pete, manager of the Mansfield Walgreen's store; Supervising Agent David Posten of the Ohio BCI; Detective Sergeant David Rohn of the Ashland County Sheriff's Office; Detective Monica Villoria of the Ashland County Sheriff's Office; Agent Andrew Webb of the Ohio BCI; Krista McCormick, records custodian for Apriss, Inc.; Ruth Kalman, appellant's mother; and Lieutenant Scott Smart of the Ashland County Sheriff's Office.

{¶6} During the defense phase of the trial, no witnesses were called.

{¶7} After hearing the evidence and arguments, the jury found appellant guilty on all counts. The trial court subsequently sentenced appellant to an aggregate prison term of twelve years and an aggregate fine of $27,500.00. *See* Judgment Entry of Sentencing, November 13, 2015, at 7.

{¶8} On November 24, 2015, appellant filed a notice of appeal. He herein raises the following two Assignments of Error:

{¶9} "I.    APPELLANT'S TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL.

**{¶10}** "II. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

**{¶11}** We will address these assigned errors in reverse order.

II.

**{¶12}** In his Second Assignment of Error, appellant argues his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. We agree in part and disagree in part.

### *Sufficiency of the Evidence*

**{¶13}** In reviewing a defendant's claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

### *The Drug Convictions*

**{¶14}** In the case *sub judice*, appellant first argues, concerning the sufficiency of the evidence going to the drug manufacturing and cultivation charges, that "the State could not place appellant at the property at the time of [the] offenses." Appellant's Brief at 6. We note the record reveals Detective Olen Martin's testimony that despite the officers' search of the location in question on June 9, 2015, appellant was not present. Trial Tr. at 66. Sergeant Kitts similarly conceded during his testimony that he was aware that appellant did not live at the State Route 58 property at the pertinent times and that he was "not sure where he was living at, at that time." Tr. at 93. Furthermore, Agent Jared Prill, who conducted "spot surveillance" of the property four or five times, stated he had

never seen appellant present. Tr. at 103. Agent David Posten conceded that although he saw appellant's mother, her apparent boyfriend, and appellant's son during his search, he never saw appellant around the seized contraband. *See* Tr. at 166-167. Finally, appellant's mother testified, regarding whether appellant lived at her residence during the relevant time frame, that "[i]t's been probably a couple years since he's stayed there." Tr. at 266.

{¶15} Nonetheless, it is well-established in Ohio that circumstantial evidence has the same probative value as direct evidence. *See, e.g., State v. Pryor,* 5th Dist. Stark No. 2007CA00166, 2008–Ohio–1249, ¶ 34, citing *Jenks, supra.* In the case *sub judice,* a number of items discovered at the State Route 58 property circumstantially tied appellant to being physically present at the drug manufacturing and cultivation site. For example, Detective Martin described a CVS Pharmacy prescription ibuprofen bottle, with appellant's name on the label, found in the house during the search. *See* Tr. at 77-78. Sergeant Kitts described another prescription bottle listing appellant's name, found in the camper. Tr. at 97. Sergeant Kitts also told the jury that paperwork with appellant's name was found in the basement of the house, including "car title work, gas bills, and other items." Tr. at 97. Agent Posten recounted some of the paperwork he discovered in the basement, including mail addressed to appellant and auto insurance policies belonging to appellant's girlfriend, Lorie. *See* Tr. at 163-164. Granted, the documents referenced by Posten utilized an Ashland city address, but we find it was not necessary in these circumstances for the State to demonstrate *continuous* residence by appellant, only that he frequented the property and possessed or exercised control over the drug operations on the premises.

{¶16} Finally, and most importantly, the State presented clear evidence that appellant and Lorie had recently been engaged in purchasing unusual amounts of pseudoephedrine, thus providing another circumstantial nexus to appellant's methamphetamine operation at the site. For example, Agent Prill testified that a package of pseudoephedrine he found on the property should have contained, based on the recent date of the purchase, a much larger remaining amount of tablets if the package had been consumed under a proper dosage. *See* Tr. at 141. We find the jurors could have reasonably treated the evidence of pseudoephedrine purchases as a "smoking gun" to tie together the remaining circumstantial evidence of appellant's connection to the State Route 58 property.

{¶17} Therefore, upon review of the aforesaid, we find sufficient circumstantial evidence existed for reasonable fact finders to conclude beyond a reasonable doubt that appellant engaged in the drug manufacturing, assembly, and cultivation activities as charged in the indictment. We thus hold said convictions were supported by the sufficiency of the evidence.[1]

### *The Weapons Conviction*

{¶18} Appellant secondly argues, concerning the sufficiency of the evidence going to the weapons under disability charge, that there was a paucity of evidence as to ownership or possession of the firearms found in the house and the camper. He correctly notes there was no testimony that the firearms were registered to appellant, and no

---

[1] However, appellant also urges that there was no evidence that any of the drug manufacturing or cultivation offenses occurred in the presence of a juvenile on the property. The State concedes that this specification was not supported by sufficient evidence, and we will direct that appellant be resentenced accordingly.

fingerprint evidence was presented to the jury. Furthermore, Detective Villoria indicated that she would not be surprised if there had been multiple owners of the firearms, and "it could be" that they were owned by Ruth Kalman. *See* Tr. at 234-235. The State attempted to utilize Ruth to prove who the guns belonged to; however, other than her "guessing" reference to the trailer sometimes being used by appellant (Tr. at 269), she provided little of probative value in the State's favor on this point. Ruth testified: "The firearms are guns that have been around. Farmers have guns, you know. And I would say the guns were – just have been there like, forever, too. They were my ex's or – and I know the one gun was my youngest daughter's. ***." Tr. at 273. Furthermore, on cross-examination by defense counsel, Ruth testified that she and her friend, Cecil Clark, both own firearms and have their CCW licenses, and that firearms belonging to herself, Clark, Lorie McClaughlin, and Ruth's daughter, as well as others, have been stored over time at the property. *See* Tr. 294-295.

{¶19} Accordingly, upon review, we find insufficient evidence was presented for reasonable fact finders to convict appellant on the weapons under disability charges, beyond a reasonable doubt. Appellant's conviction under Count VI of the indictment is therefore vacated.

### *Manifest Weight of the Evidence*

{¶20} In regard to appellant's manifest weight challenge to his convictions, our standard of review is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and

a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. *See also, State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

**{¶21}** Appellant's focus is again on the issues of placing appellant at the residence in question and the ownership or possession of the firearms found at the property.[2] As appellant correctly notes, there was testimony from at least one law enforcement officer that some of the mail seized at the State Route 58 location was addressed to appellant at a Main Street address in Ashland. *See* Tr. at 145-146.

**{¶22}** However, in the interest of justice we have reviewed the record under the standard of *Martin,* and we find the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's convictions be reversed and a new trial ordered. Appellant's drug-related convictions were not against the manifest weight of the evidence.

**{¶23}** Appellant's Second Assignment of Error is therefore overruled in part and sustained in part.

I.

**{¶24}** In his First Assignment of Error, appellant contends he was deprived of the effective assistance of trial counsel. We disagree.

**{¶25}** Our standard of review for ineffective assistance claims is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio

---

[2] Based on our determinations as to the insufficiency of the evidence regarding the weapons charge(s), the issue of manifest weight is now limited to the drug manufacturing and cultivation counts.

adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis: First, we must determine whether counsel's assistance was ineffective; *i.e.,* whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.* Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267.

{¶26} In the case *sub judice*, appellant emphasizes that although his trial counsel did enter three objections during the trial (Tr. at 20, 292, 319), trial counsel specifically failed to object to the following: (1) Detective Olen Martin's reference at trial to Ruth Kalman's property as "Mr. Kalman's residence" (Tr. at 53); (2) Detective Monica Villoria's testimony that the center downstairs bedroom in the basement of the house was "[determined] [t]o be Mark Kalman's" (Tr. at 181); and (3) to Detective Scott Smart's testimony that Ruth Kalman had told him that appellant and Lorie McClaughlin owned the camper on the property (Tr. at 310). Specifically, appellant urges that the first two instances above were objectionable because the State failed to lay a proper foundation for Detective Martin's statement regarding appellant's residency in the house and Detective Villoria's conclusion that appellant lived in the basement. *See* Evid.R. 602.

Furthermore, appellant maintains that Detective Smart's testimony about ownership of the camper on the property was hearsay. *See* Evid.R. 801.

**{¶27}** Appellant maintains that because his defense at trial was that he did not live at his mother's home and that he was not present for any criminal activity, trial counsel's failure to object to the aforesaid testimony fell below an objective standard of reasonableness. Appellant also contends he was prejudiced because this testimony was the only direct evidence presented that he lived at the property during the timeframe in question.

**{¶28}** It is well-established that "[c]ompetent counsel may reasonably hesitate to object [to errors] in the jury's presence because objections may be considered bothersome by the jury and may tend to interrupt the flow of a trial." *State v. Rogers*, 9th Dist. Summit No. 19176, 1999 WL 239100, citing *State v. Campbell* (1994), 69 Ohio St.3d 38, 53, 630 N.E.2d 339 (internal quotations omitted). Moreover, the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697.

**{¶29}** We first note appellant does not appear to challenge Agent Prill's statement on cross that "it was known that he was using that address [100 S.R. 58] as his current address." *See* Tr. at 145. Nonetheless, the record reveals that Ruth Kalman testified to appellant having grown up and lived on the property, and that he had stayed in a room in the basement. Tr. at 265, 269. Ruth also testified regarding appellant's use of the camper: "Well I guess Mark did. I don't know. I don't think anybody really used it. It was there." Tr.

at 269. She also recalled that appellant used to visit his son, B.K., before he went into rehab care, "two or three maybe times a week." Tr. at 270.

{¶30} We reiterate that it was not necessary for the State to show appellant continuously resided at the property in question in order to prove he was involved with the drug operations at the site. In light of the foregoing, and in conjunction with the circumstantial evidence analyzed previously herein, we find appellant has failed to demonstrate a reasonable probability that but for counsel's alleged error in failing to object at the points cited, the outcome of the trial would have been different.

{¶31} Appellant's First Assignment of Error is therefore overruled.

{¶32} For the foregoing reasons, the judgment of the Court of Common Pleas, Ashland County, Ohio, is hereby affirmed in part, reversed in part, and remanded with directions to vacate appellant's weapons under disability conviction and any "vicinity of a juvenile" specifications in the remaining counts, and to resentence him accordingly.

By: Wise, J.

Farmer, P. J., and

Hoffman, J., concur.

JWW/d 0701